IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIO PINEDA VELASQUEZ,         *

      Petitioner,             *

v.                            *          Civil Action No. GLR-25-3215

SECRETARY KRISTI NOEM, et al.,     *

      Respondents.           *

                               ***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Petitioner Mario Pineda Velasquez's[1] ("Pineda" or "Petitioner") Amended Petition for Writ Habeas Corpus (ECF No. 6) and Nikita Baker, Vernon Liggins, Todd M. Lyons, and Kristi Noem's (collectively, "the Government" or "Respondents") Motion to Dismiss (ECF No. 11). The Motion is fully briefed, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant the Amended Petition for Writ Habeas Corpus in part and deny it in part, and the Court will deny the Government's Motion to Dismiss.

### I.    BACKGROUND

#### A.    <u>Factual Background</u>

Petitioner Mario Pineda Velasquez is a native and citizen of Guatemala. (Am. Pet. ¶ 1, ECF No. 6). He entered the United States in 2000 and has been here for twenty-five years. (Id. ¶ 13). He purportedly entered the United States without being lawfully admitted

---

[1] "Pineda Velasquez" is the Petitioner's correct surname. The Court directs the Clerk to update the docket accordingly.

or paroled. (Resp'ts' Answer & Mem. L. Supp. Mot. Dismiss ["Answer"] at 3, ECF No. 11; NTA at 2, ECF No. 11-1).[2] He has two U.S. citizen children, (Am. Pet. ¶ 13), and no criminal history or convictions have been alleged, (see Detention Detail Sheets at 2, ECF Nos. 11-3, 11-4 ("Detention Classification: Low")).

On September 24, 2025, U.S. Immigration and Customs Enforcement ("ICE") officials detained Pineda in a Home Depot parking lot. (Am. Pet. ¶ 13). ICE officials then took him into custody at the Baltimore ICE Holding Cells and served him with a Form I-862 Notice to Appear ("NTA") in the Hyattsville Immigration Court. (Id.; NTA at 1). Two days later, on September 26, 2025, Pineda was moved to an ICE facility in Florence, Arizona. (Am. Pet. ¶ 13; EOIR Address at 2, ECF No. 11-2). The NTA charges Pineda under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled and under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for not being in possession of valid entry or travel documents. (NTA at 5).

B.    **Procedural History**

On September 27, 2025, Petitioner filed an Emergency Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this Court. (ECF No. 1). On October 2, 2025, Petitioner filed an Amended Petition. (ECF No. 6). On October 14, 2025, Respondents submitted a consolidated Answer to the Amended Petition and Motion to Dismiss. (ECF No. 11). On October 17, 2025, Petitioner submitted his Reply and Amended Reply. (ECF Nos. 13, 14).

---

[2] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

To date, Petitioner has not had a bond hearing in front of an Immigration Judge ("IJ") and remains detained in Florence, Arizona. (Pet'r's Am. Reply ["Reply"] at 3, 6, 14, ECF No. 14).

## II.    DISCUSSION

### A.    Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243; see also Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *2 (E.D.Mich. Sept. 9, 2025) (explaining relevant standard of review in habeas cases).

### B.    Analysis

#### 1.    Jurisdiction

The Court will first address jurisdiction. Respondents argue that this Court does not have jurisdiction over these claims and that 8 U.S.C. § 1252(b)(9) bars judicial review. (Answer at 13). Section 1252(b)(9), however, bars judicial review of issues "arising from" removal proceedings and orders rather than custody determinations. See Leal-Hernandez v. Noem, No. JRR-25-02428, 2025 WL 2430025, at *6 (D.Md. Aug. 24, 2025). Moreover, the United States Supreme Court has rejected an overinclusive interpretation of § 1252(b)(9) that encompasses custody determinations. Maldonado de Leon v. Baker, No. TDC-25-3084, 2025 WL 2968042, at *3 (D.Md. Oct. 21, 2025) (citing Jennings v.

3

Rodriguez, 583 U.S. 281, 293–95 (2018)). Because this case concerns a custody determination, the Court finds that it has jurisdiction to review Pineda's Amended Petition and agrees with other district courts that have reached the same conclusion. See, e.g., Leal-Hernandez, 2025 WL 2430025, at *6 (rejecting government's argument that § 1252(b)(9) functions as judicial bar and noting that "[n]one of the cases on which the Government relies bears remote relevant relation to this habeas action – not the facts, not the procedural posture, and not the relief requested").

### 2.      Administrative Exhaustion

The Court next turns to administrative exhaustion. No applicable statute or rule mandates administrative exhaustion in these circumstances; therefore, "sound judicial discretion governs." Miranda v. Garland, 34 F.4th 338, 351 (4th Cir. 2022) (quoting McCarthy v. Madigan, 503. U.S. 140, 144 (1992)).

"To determine whether requiring exhaustion is appropriate, 'federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion.'" Maldonado de Leon, 2025 WL 2968042, at *4 (quoting McCarthy, 503 U.S. at 146). "[I]nstances in which an individual's interest heavily outweighs exhaustion are when an administrative agency is shown to have 'predetermined the issue before it,' and when there is an 'unreasonable or indefinite timeframe for administrative action.'" Id. at *4 (quoting McCarthy, 503 U.S. at 146–48).

Here, there is no reason to require prudential exhaustion or exhaustion of administrative remedies in this Court's discretion. Though Petitioner may request a bond

hearing in front of an IJ, such a request would be an exercise in futility, as the result of such administrative proceedings has already been "predetermined." See McCarthy, 503 U.S. at 148. As both parties have recognized, the Board of Immigration Appeals ("BIA") has recently issued a precedential decision, Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), that divests IJs of jurisdiction to hold bond hearings for noncitizens who were not lawfully admitted because the BIA determined that all such noncitizens are subject to mandatory detention under 8 U.S.C. § 225(b)(2). Id. at 228. Thus, the predetermined result of such a hearing would be Pineda's mandatory detention.

Furthermore, as this Court has found before, "where administrative processes may result in undue delay, a court may properly consider that as a factor militating against requiring exhaustion." Leal-Hernandez, 2025 WL 2430025, at *12 (citing McCarthy, 503 U.S. at 146–47). The Court could require Pineda to exhaust administrative remedies, including BIA review, until further judicial review by a U.S. Court of Appeals; however, "the timeframe required to pursue all those steps would be 'unreasonable' because with the passage of time, the allegedly improper detention would continue to occur and could not be meaningfully undone." Maldonado de Leon, 2025 WL 2968042, at *8 (citing McCarthy, 503 U.S. at 147).

If Pineda is correct that he should be detained under 8 U.S.C. § 1226(a), then he is entitled to a bond hearing and may be released from custody. 8 U.S.C. § 1226(a)(2)(a). This issue, therefore, is ultimately a matter of statutory interpretation: to decide whether he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) or discretionary detention under 8 U.S.C. § 1226(a). (Reply at 7–8). Matters of statutory interpretation are within the

sound province of the judiciary. <u>Loper Bright Enters. v. Raimondo</u>, 603 U.S. 369, 385 (2024) (citing <u>Marbury v. Madison</u>, 5 U.S. 137, 177 (1803)).

Additionally, because the Government argues that Pineda "is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)," (Answer at 9), and because of BIA precedent in <u>Yajure Hurtado</u>, an IJ will lack the authority to resolve this dispute. Pineda's continued detention under 8 U.S.C. § 1225(b)(2) will necessarily result in him being detained until the end of his removal proceedings or an appeal to a court of appeals, a process that could take months or even years and would result in a miscarriage of justice if the proper detention authority were § 1226(a). This Court thus finds waiver of the requirement to exhaust administrative remedies appropriate. This Court will not compel Pineda to pursue such remedies before seeking habeas relief and now turns to the merits of Pineda's claims.

**3.     Section 1226(a)**

**a.     Inapplicability of § 1225(b)(1)**

Respondents have relied on 8 U.S.C. § 1225(b)(1) to support the use of mandatory detention in this case. (Answer at 9). Under this statute, two groups of people are subject to § 1225(b)(1) expedited removal:

> If an immigration officer determines that an alien . . . <u>who is arriving in the United States</u> or <u>is described in clause (iii)</u> is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added). An individual described in clause (iii) and subject to this provision is:

> An alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II). All individuals subject to this provision who do not manifest a fear of persecution or intention to apply for asylum are summarily removed via "expedited removal," without further hearing or review. 8 U.S.C. § 1225(b)(1)(B)(iii). The provision states that those who do manifest a fear of persecution "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

As stated, for mandatory detention under § 1225(b)(1) to apply, a noncitizen must either (1) be "arriving in the United States," § 1225(b)(1)(A)(i), or (2) have not been admitted or paroled into the U.S. and not have sufficiently shown at least two years of continuous presence in the United States, § 1225(b)(1)(A)(iii)(II). Here, Pineda does not fall under § 1225(b)(1) because the Court finds that the documentation that he submitted sufficiently demonstrates that he has been physically present in the United States for at least twenty-three years. This documentation includes, but is not limited to: a Montgomery County, Maryland marriage certificate from April 2004, (ECF No. 14-2); the birth certificates of his two U.S. citizen children from January 30, 2007, and September 29, 2014, (ECF No. 14-3); a deed from 2018 and mortgage documents for Pineda's home in Laurel, Maryland, (ECF No. 14-4); and income tax documents from 2002 through 2023, (ECF No 14-6). The Court has no reason to doubt the authenticity of these documents.

7

Therefore, because Pineda is not arriving in the United States and has been physically present for at least twenty-three years, the Court finds that he cannot be subject to expedited removal or mandatory detention under 8 U.S.C. § 1225(b)(1).

###### b.    Statutory Interpretation of 8 U.S.C. §§ 1226(a) and 1225(b)(2)

The Court next considers whether a review of the relevant INA statutes supports detention under § 1226(a) or § 1225(b)(2). If Pineda is detained under 8 U.S.C. § 1225(b)(2), his detention is mandatory. If he is not, his detention falls under the 8 U.S.C. § 1226(a) detention framework, and he is entitled to a bond hearing before an IJ. For the reasons set forth below, the Court finds that a plain reading of the statute makes clear that Pineda is not an "applicant for admission" under § 1225(b)(2)(A) and instead falls under the discretionary detention category under § 1226(a) as a noncitizen who "[o]n a warrant" was "arrested and detained" during the pendency of removal proceedings under § 1229a. See generally § 1226(a).

The Government argues that Pineda is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Answer at 9). In relevant part, that provision provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Section 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and contains subsections related to stowaways, crewmen, and noncitizens arriving from contiguous territories. 8 U.S.C. § 1225. It also contains provisions authorizing officers to "board and

search any vessel, aircraft, railway car, or other conveyance in which they believe aliens are being brought into the United States," and references detention authority at airports of arrival. 8 U.S.C. § 1225(d).

Pineda argues instead that his detention is subject to 8 U.S.C. § 1226. (Reply at 3). This section is entitled "Apprehension and detention of aliens," and contains subsection § 1226(a), "Arrest, detention, and release," stating that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "Under applicable regulations, if ICE determines pursuant to § 1226(a) that a noncitizen will be detained, that individual may seek review of the detention decision by requesting a bond hearing before an immigration judge." Maldonado de Leon, 2025 WL 2968042, at *5 (citing 8 C.F.R. §§ 236.1(d), 1003.19; 1236.1(d)).

When engaging in statutory interpretation, courts must "begin with the plain language" of the statute. Hately v. Watts, 917 F.3d 770, 784 (4th Cir. 2019) (quoting In re Total Realty Mgmt., LLC, 706 F.3d 245, 251 (4th Cir. 2013)). "To determine a statute's plain meaning," courts "not only look to the language itself, but also 'the specific context in which the language is used, and the broader context of the statute as a whole.'" Id. (quoting In re Total Realty Mgmt., LLC, 706 F.3d at 251).

Considering the plain language of §§ 1225(b)(2) and 1226(a), the Court finds that § 1226(a) plainly applies to Pineda. He was "arrested" on a "warrant" and "placed into removal proceedings," (Answer at 4–6), the framework described in § 1226(a). No such warrant or arrest provisions exist in § 1225(b)(2), further bolstering this finding. Notably,

the Government refers to "[a]n I-200 'Warrant for Arrest of Alien' [that] was issued to Petitioner," though the warrant itself was not in the evidentiary filing. (Answer at 6). These I-200 warrants "command[] '[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act' to 'arrest and take [] into custody for removal proceedings'" the named noncitizen. See Maldonado de Leon, 2025 WL 2968042, at *6 (quoting the language of the I-200 warrant). "Where section 236 of the INA is codified at 8 U.S.C. § 1226, and that authority is explicitly referenced in [I-200 warrants]," it becomes clear that § 1226 is the applicable statute governing such detention. See id.

In looking at the interplay between the various subsections of § 1225, the Court has found that § 1225(b)(1) is inapplicable to Pineda, as it solely addresses those who are "arriving" in the United States or those who have been here for a short period of time. See, e.g., § 1225(a)(2) ("An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer."). Section 1225 repeatedly refers to individuals "arriving" in the United States throughout the subsections and references vehicles "bringing [aliens] to the United States," "airport[s] of arrival," and "port[s] of entry." See generally § 1225. This focus throughout § 1225 on the actual place and manner of arrival of noncitizens to the United States similarly bolsters Pineda's arguments that § 1226, and not § 1225, is the correct statutory authority here, (Reply at 5–10), where Pineda has been present in the United States for at least twenty-three years.

Additionally, the recent legislative history of the INA further supports that § 1226 applies here. Earlier this year, the Legislature amended § 1226 via the Laken Riley Act,

Pub. L. No. 119-1, 139 Stat. 3 (2025), in a manner that renders the Government's interpretation of § 1225(b)(2) superfluous. This amendment, now codified at 8 U.S.C. § 1226(c)(1)(E), mandates detention for noncitizens who are inadmissible under certain inadmissibility grounds who have been charged with or convicted of certain crimes. §§ 1226(c)(1)(E)(i)–(ii). Other district courts have relied on this recent amendment in finding § 1226(a) to be the proper detention authority for noncitizens in Pineda's position:

> Considering that § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled," and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well. Gomes [v. Hyde, No. 1:25-CV-11571-JEK,] 2025 WL 1869299, at *7 [(D.Mass. July 7, 205)]. That is, because an alien present in the United States without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them. Id.; see Marx v. Gen. Rev. Corp., 568 U.S 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"). As a district court in Massachusetts explained, "[s]uch an interpretation would largely nullify a statute Congress enacted this very year [and] must be rejected." Gomes, 2025 WL 1869299, at *7.

Pizarro Reyes, 2025 WL 2609425, at *7 (emphasis added). The Court's analysis here is consistent with the findings of other federal district courts. For example, most recently here in Maryland, Judge Chuang explained that "[a]lthough [§ 1225(b)(2)] applies to an 'applicant for admission,' that is not the only operative language in [the statute]. Rather, the statute conditions mandatory detention on a determination by an immigration officer that 'an alien seeking admission' is not clearly entitled to be admitted." Maldonado de

Leon, 2025 WL 2968042, at \*7 (citing 8 U.S.C. § 1225(b)(2)(A)). The Court went on to

find that:

> The requirement that the alien at issue be "seeking admission"
> necessarily limits the applicability of this provision to one who,
> at the time of the detention, was seeking or attempting to gain
> "lawful entry . . . into the United States after inspection and
> authorization by an immigration officer." 8 U.S.C. §
> 110l(a)(13)(A) (defining "admission" under the INA). To
> conclude otherwise would be to render this language
> superfluous . . . [Petitioner], like other noncitizens who have
> been present in the United States for years, have never
> attempted to acquire legal entry or status, and are not actively
> doing so at the time of their detention, cannot be deemed to
> have been "seeking admission" at the time of his detention at
> the gas station in Maryland. Multiple federal district courts
> have reached this same conclusion as to similarly situated
> individuals.

Id. (emphasis added) (citations omitted). At the time that Pineda was arrested and detained

on a warrant, he had not taken any steps to apply for admission. And, as found in

Maldonado de Leon, here, "Respondents' citation to cases that discuss 'admission' or

'seeking admission' in different contexts do[es] not alter the Court's reading of the plain

language of this statutory provision." Id.

Finally, the BIA's recent decision in Yajure Hurtado is not persuasive nor binding

on this Court. See id. at \*8. Under Loper Bright, it is within the federal court's power to

"exercise independent judgment in determining the meaning of statutory provisions," and

courts "need not . . . defer to an agency interpretation of the law simply because a statute

is ambiguous." 603 U.S. at 394, 413. Further, as recognized recently in this district:

> Loper Bright also counsels that "the longstanding 'practice of
> the government'—like any other interpretive aid—can inform
> [a court's] determination of 'what the law is.'" [Loper Bright,

12

144 S.Ct.] at 2258 (quoting NLRB v. Noel Canning, 573 U.S. 513, 525 (2014)). Particularly where Respondents' new interpretation of these detention provisions so as to require mandatory detention of all inadmissible noncitizens runs counter to nearly 30 years of government immigration practice, the BIA's recent about-face in Matter of Yajure-Hurtado carries very little weight. See e.g., Hasan [v. Crawford, No. 25-cv-1408 (LMB/IDD)], 2025 WL 2682255, at *9 [(E.D.Va. Sept. 19, 2025)] (considering the longstanding agency practice of applying § 1226(a) to inadmissible noncitizens already present in the United States as an additional factor in favor of that interpretation); Lepe [v. Andrews, No. 25-cv-01163-KES-SKO], 2025 WL 2716910, at *8 [(E.D.Cat. Sept. 23, 2025)] (same).

Maldonado de Leon, 2025 WL 2968042, at *8. The Court therefore finds that based on canons of statutory interpretation, Pineda's detention should be under the framework of 8 U.S.C. § 1226(a) and that he is not an "applicant for admission" subject to § 1225(b)(2).

### c.    Prior Practice and Usage of § 1226(a)

This finding that Pineda is not an "applicant for admission," and is therefore subject to discretionary detention and entitled to a bond hearing under § 1226(a), is consistent with the decades-long history of the application of § 1226(a). The Supreme Court has recognized § 1226(a) as "the default rule" for noncitizens who were inadmissible at the time of entry and detained "once inside the United States." Jennings, 583 U.S. at 288. Similarly, in Johnson v. Guzman Chavez, 594 U.S. 523 (2021), the Supreme Court outlined the typical procedure for removal proceedings for noncitizens who entered the U.S. without inspection as follows:

> The [INA] establishes procedures for removing aliens living unlawfully in the United States. In the ordinary course, if the Department of Homeland Security (DHS) discovers that an alien is living in the United States without authorization, it may

> initiate removal proceedings against the alien by sending him a "notice to appear." [8 U. S. C. § 1229(a)]. That notice informs the alien of, among other things, the charges against him and the time and place of the hearing at which an immigration judge will determine whether the alien is to be removed. §§ 1229(a)(1)(D), (G)(i).
>
> The INA further provides that DHS may arrest and detain the alien "pending a decision on whether the alien is to be removed from the United States." § 1226(a). Aliens who are arrested and detained may generally apply for release on bond or conditional parole. § 1226(a)(2).

Id. at 527–28. Under existing Supreme Court precedent, Section 1226 "applies to aliens already present in the United States." Jennings, 583 U.S. at 303 (emphasis added). The Government's argument that Pineda is an "applicant for admission" subject to mandatory detention under § 1225(b)(2), (Answer at 8–13), is inconsistent with decades-long precedent on this topic.

Further, the Government's reliance on the Jennings Court's statement that § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," (Answer at 17 (quoting Jennings, 583 U.S. at 287)), is misplaced. In the first part of the Jennings opinion, the Court broadly described the differences between individuals subject to § 1225(b)(1) and § 1225(b)(2) and noted that the latter, § 1225(b)(2), is the "catchall provision" for noncitizens seeking admission at the "Nation's borders and ports of entry," while § 1226(a) is the "default rule" for noncitizens "once inside the United States." Jennings, 583 U.S. at 286–88. The Court recognized that § 1226(a) authorizes "the Government to detain certain aliens already in the country pending the outcome of removal proceedings." Id. at 288–89. Based on this precedent, the

Court finds that Pineda is subject to the discretionary detention and bond provisions under § 1226(a) and that detention under § 1225(b)(2) is improper.

### 4.    Fourth and Fifth Amendment Claims

Because the Court finds that Pineda is detained and entitled to a bond hearing under the statutory authority of § 1226(a), the Court declines to decide the merits of Pineda's Fourth and Fifth Amendment claims.

### 5.    Attorneys' Fees

Finally, Pineda requests attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), (Am. Pet. at 9), which allows a court to "award reasonable fees and expenses of attorneys" to a "prevailing party in any civil action brought by or against . . . any agency or any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(b). In Obando-Segura v. Garland, 999 F.3d 190 (4th Cir. 2021), however, a case in which a petitioner had filed a successful habeas petition seeking release from immigration detention, the Fourth Circuit held that attorney's fees relating to a habeas petition are not available under the EAJA because such a petition is not a "civil action" for purposes of the EAJA. Id. at 191, 197. The Court therefore must deny Pineda's request for attorney's fees and costs under the EAJA.

## C.    Government's Motion to Dismiss

After a Petition for a Writ of Habeas Corpus is filed, the proper response by the Respondent is the filing of an Answer, to be followed by a Reply filed by the Petitioner. See Rules 2, 5, Rules Governing Section 2254 Cases in the United States District Courts

15

("Habeas Rules"); see also Habeas Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a).").

There is no corresponding action or motion to dismiss under the Habeas Rules. Although the Federal Rules of Civil Procedure "may" be applied to a habeas petition, see Habeas Rule 12, the Court ordinarily does not apply Federal Rule of Civil Procedure 12, which governs the filing of a motion to dismiss, to a habeas petition because such a motion is effectively duplicative of an Answer to a Petition, in which all relevant arguments that could be made on such a motion can and should be made.

Here, where the arguments in the Motion to Dismiss were all simultaneously asserted in Respondents' Answer through a single brief addressing both the Answer and the Motion, (see ECF No. 11), the Court finds that (1) there was no need for a Motion to Dismiss; and (2) the Court's resolution of the Amended Petition necessarily resolves the Motion to Dismiss. Because the Court has denied Respondents' jurisdictional and procedural arguments, and it has granted the Amended Petition, the Government's Motion to Dismiss will be denied. See Maldonado de Leon, 2025 WL 2968042, at *11.

16

### III.    CONCLUSION

For the foregoing reasons, the Court will GRANT Pineda's Amended Petition (ECF No. 6) in part and DENY it in part. The Amended Petition will be granted to the extent explained in this Opinion and accompanying Order and denied as to all other respects. The Court will DENY the Government's Motion to Dismiss (ECF No. 11). A separate Order follows. Entered this 27th day of October, 2025.

<div align="right" style="margin-right: 20%;">

/s/
George L. Russell, III
Chief United States District Judge

</div>